Erling David LARSEN, Plaintiff,

v.

GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant.

No. 4–66 Civ. 38.

United States District Court
D. Minnesota,
Fourth Division.

March 14, 1967.

———◆———

Norman W. Larsen, of King, MacGregor & Lommen, Minneapolis, Minn., for plaintiff.

Franklin D. Gray, of Cant, Haverstock, Beardsley, Gray & Plant, Minneapolis, Minn., for defendant.

ORDER

NORDBYE, District Judge.

This proceeding comes before the court on a motion by the defendant, General Motors Corporation (hereinafter referred to as "GM") for summary judgment. On February 18, 1964, the plaintiff was involved in a head-on collision with another automobile while operating a 1963 Corvair automobile owned by his passenger, one Jean Ann Reader, and manufactured by the defendant. In his

complaint, the plaintiff contends that when the two vehicles collided with one another, the steering shaft and wheel of the automobile he was driving was displaced rearward striking him in the head and causing severe injuries for which he now seeks recovery. The plaintiff makes no contention that the collision itself was caused by any defect in the 1963 Corvair automobile. However, the plaintiff does allege that the defendant was negligent in its design and engineering of the Corvair and also that the defendant breached both an express warranty and the implied warranties of merchantability and fitness for the purpose for which the vehicle was intended.

■ Under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., summary judgment will be granted

> "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Since there is no dispute between the parties at least in so far as the crucial facts are concerned, the only question before this Court is what was the legal duty owed by the defendant to the plaintiff. The latter contends that the defendant was obligated to design the 1963 Corvair automobile so that it would protect the plaintiff and others from the forces generated by a head-on collision. The defendant takes the position that its duty was limited to designing and constructing an automobile which had no hidden or latent defects and which was fit for the ordinary purposes for which the automobile was made. Unless the defendant's duty is as broad as the plaintiff contends, the defendant is entitled to summary judgment regardless of whether the theory of liability is based on negligence or warranty. This is so because if there was no legal duty to produce a vehicle which would protect the occupants from injury in a head-on collision, no factual dispute could arise as to whether or not the duty was breached.

Further, there can be no question as to whether the defendant did or did not warn the plaintiff of the dangers involved in a head-on collision if in fact there was no duty on the part of the former to do so. The only express warranty upon which plaintiff relies is the usual and customary new-vehicle warranty for the replacement and repair of defective parts issued by the manufacturer, a copy of which is attached to defendant's answer herein. This express warranty in no way avails plaintiff in this proceeding.

The recent case of Evans v. General Motors Corp., 359 F.2d 822 (7 Cir. 1966), is very closely related to the instant case. There, the personal representative of the decedent's estate brought an action to recover damages on the grounds that the death of the decedent was caused by the negligent design of the automobile manufactured by the defendant. Specifically, the decedent was killed in a broadside collision while operating a Chevrolet station wagon. The basis of the plaintiff's complaint was that the vehicle was designed with an "X" frame instead of a perimeter frame with the placement of the front seat at the intersection of the X. The plaintiff alleged that by failing to provide siderails, as other manufacturers did, the defendant created an unreasonable risk of harm to the occupants of the automobile in the event of an impact against the side of the vehicle. The district court dismissed the complaint and the Circuit Court of Appeals affirmed reasoning that the only crucial issue raised by the complaint was the nature of the duty owed by an automobile manufacturer to users of its products. In this regard, the court concluded:

> "A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all. Campo v. Scofield, 1950, 301 N.Y. 468, 95 N. E.2d 802, 804." (p. 824).

The court also pointed out:

> "The intended purpose of an automobile does not include its participation in collisions with other objects, despite

the manufacturer's ability to foresee the possibility that such collisions may occur. As defendant argues, the defendant also knows that its automobiles may be driven into bodies of water, but it is not suggested that defendant has a duty to equip them with pontoons." (p. 825).

This last statement of the court seems to repudiate the contention made by the plaintiff in that case that the defendant had a duty to protect occupants of its automobiles from injury or death in broadside collisions since such an accident was foreseeable. The court indicated that the defendant was correct in conceding that its only duty was

"to design its automobile to be reasonably fit for the purpose for which it was made, without hiding defects which would make it dangerous to persons so using it." (p. 824).

Finally, the court indicated that even though other manufacturers equipped their vehicles with perimeter frames, this would not make the defendant any more culpable. The court said:

"We cannot agree with the plaintiff that the defendant had a duty to equip all its automobiles with side rail perimeter frames, or that such a duty can be inferred from the mere fact that some of the defendant's, or some of its competitors', automobiles are now made with side rails, or from the opinions of certain experts that perimeter frames are 'safer' in a collision. Defendant had a duty to test its frame only to ensure that it was reasonably fit for its intended purpose." (p. 825).

It appears to this court that no material or significant difference exists between the frame of an automobile and the steering shaft and wheel at least with respect to the manufacturer's duty toward occupants of such vehicles is concerned. In *Evans,* the plaintiff proceeded on the theory of negligent design and breach of warranty but recovery was denied. It would seem from that case alone that recovery should be denied here also.

In Schemel v. General Motors Corp., EV 66–C–58 (S.D.Indiana 1966), the plaintiff sought to recover for personal injuries suffered when the vehicle in which he was riding was struck from the rear by a Chevrolet automobile traveling at about 115 miles per hour. The defendant automobile manufacturer is alleged to have been negligent in designing and manufacturing an automobile capable of being operated at such a speed, in failing to install a governor making such a speed impossible, and in designing and making a vehicle which was more dangerous than necessary. The court dismissed the plaintiff's action with prejudice, pointing out:

"We consider the holding of the Seventh Circuit Court of Appeals in Evans to be dispositive of plaintiff's first contention that defendant had a duty to refrain from manufacturing and selling cars capable of speeds in excess of 100 miles per hour, unless equipped with a governor in the case of sales to the 'ordinary consumer.' * * * It is noteworthy that in Evans the injury occurred precisely in the manner which the manufacturer could have foreseen, yet the Court of Appeals affirmed the judgment of this Court dismissing the action, holding that there is no duty to make an automobile 'more safe' when the danger to be avoided is obvious to all, so long as it is reasonably fit for its intended use."

The *Schemel* case also brought out another consideration in this area when it said:

"The problem of devising standards of safety for the manufacture of automobiles is a legislative problem. Evans v. General Motors Corporation, supra; Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802. * * * Obviously, if regulation in this area is to come— and we do not say it should not—it should come in the form of an act which would apply a uniform national standard to a highly centralized national industry, and not be hammered out, higgledy-piggledy, on a case to case basis with all of the disparity which would inevitably result."

In the *Evans* case, the court made the following similar statement:

"Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law." (359 F.2d p. 824).

In the recent decision of Charles H. Shumard, Administrator of the Estate of Donald W. Shumard, Deceased v. General Motors Corp., U.S.Dist.Ct., 270 F.Supp. 311, Southern Dist. of Ohio, E. Div., filed February 28, 1967, the complaint stated that plaintiff's decedent was killed while in a 1962 Corvair automobile when it was in a collision with another automobile and that the Corvair car upon collision burst into flames and killed plaintiff's decedent. Plaintiff on the theory of improper design of the Corvair claimed liability on the part of the manufacturer. The court cited the *Evans* case, supra, and Kahn v. Chrysler Corp., 221 F.Supp. 677 (S.D.Tex.1963). From the latter case, the following was quoted as to who should determine the question of duty. The court stated (p. 679):

"However, who is to determine if a duty exists? Is this a matter of law or a disputed fact question itself? Certainly, there is disagreement in the instant case over whether or not the defendant had a duty to so design his vehicle that an accident like that under consideration could never happen. The very essence of plaintiff's complaint is that the defendant owed to the plaintiff a duty to manufacture an automobile with which it was safe to collide. But this is not sufficient to constitute a disputed fact issue, for this is a question of law to be determined by the court. Whether or not a legal duty exists on a given state of facts and circumstances so as to give rise to actionable negligence or breach thereof, as well as the nature and extent of the duty, is always essentially a question of law."

In commenting upon the *Evans* and *Kahn* cases, the court stated in the *Shumard* case (p. 314 of 270 F.Supp., D.C. opinion):

"These cases conclusively demonstrate that an automobile is not made for the purpose of striking or being struck by other vehicles or objects and that the duty of an automobile manufacturer does not include the duty to design and construct an automobile which will insure the occupants against injury no matter how it may be misused or bludgeoned by outside forces."

■■ All of these factors when considered together lead to but one conclusion: The defendant GM's duty toward the public is to design an automobile which is reasonably safe when driven and which contains no latent or hidden defects which could cause an accident and subsequent injury to either the driver or passengers of the vehicle. No contention is made here by the plaintiff that any design defect caused the accident which allegedly resulted in the plaintiff's injuries. In view of this fact and because this Court believes that any standards in this area must be left to the Legislature, this court has no alternative but to find that the defendant was not negligent in its design and construction of the 1963 Corvair automobile in that it was under no duty to make a vehicle which would protect the plaintiff from injury in the event of a head-on collision.

■■ Similarly, this court is of the opinion that the defendant was not under any duty to warn the plaintiff as to the alleged "latent defects" and "unsafe condition" of the vehicle in question, if in fact there were any, since the law only requires a warning when the defects would render the product unsafe for its intended use. See Evans v. General Motors Corp., supra. The plaintiff admits that the steering column on the 1963 Corvair was not defective and that it operated properly to control the vehicle. The intended use of an automobile does not include its participation in head-on collisions and, therefore, there was no duty on the part of the defendant to warn

that in the event of such a collision the plaintiff might be injured as a result of a rearward displacement of the steering shaft and wheel. Such a danger was not hidden since it was obvious that the engine was in the rear.

■ Realistically, no passenger automobile insures absolute safety to the driver or the passengers therein on a head-on collision with another automobile. For instance, some cars are equipped only with collapsible roll-away fabric tops, and in the event of an accident which causes the car to roll over, there would be relatively no protection for the driver or the passengers therein. However, other automobiles equipped with metal tops may roll over in an accident and the occupants therein are often relatively free from serious injury. It is well known that some cars have front bumpers, for instance, that are so constructed that they may lighten materially the impact of a head-on collision, but that fact, without legislation, should not require every car manufacturer to duplicate this particular safety measure. Some small foreign-type cars present greater road hazards to the drivers and passengers than the larger American-built cars. These, and many more examples which could be cited, tend to illustrate that the promulgation of safety measures which car manufacturers should adopt in their construction of automobiles in anticipation of road accidents are not for the courts to determine. In light of these considerations, this court concludes that defendant's motion for summary judgment as to Count I should be granted.

■ Count II of the plaintiff's complaint likewise fails to raise any issue of material fact since the defendant was never under any legal duty to make the implied warranties upon which the plaintiff now seeks to recover. To reiterate, the defendant only was required to design and in turn warrant that its automobiles were free from hidden or latent defects and would operate properly when being driven. Needless to say, if the defendant had no duty to provide a vehicle which would protect the driver or his passengers from injuries in the event of a head-on collision, then this court cannot and will not imply that the defendant had made such a warranty. Where, as in this case, the plaintiff makes no contention that the vehicle manufactured by the defendant was not fit for its intended purpose, which was transportation, then there can be no breach of any implied warranty of merchantability or fitness. Count II of the plaintiff's complaint also must be dismissed.

The court has given due consideration to the cases cited by counsel for the plaintiff. For the most part, they pertain to negligence of the manufacturer in failing to exercise reasonable care in the production of an automobile for the uses for which it was reasonably intended. The case of Mickle v. Blackmon Cherokee Construction Company and Ford Motor Company, Cir.Ct. 6th Judicial Cir., York County, South Carolina, decided March 4, 1965, where a verdict was rendered against the Ford Motor Company by reason of its unsafe design of a gear shift lever causing injury to a passenger in a two-car collision is of no persuasive weight here in that no judgment has been entered as yet on the jury's verdict. Moreover, the *Evans* and *Shumard* cases present the more convincing applicable law under the circumstances herein.

In view of the foregoing, it follows that defendant is entitled to a summary judgment in its favor and the complaint herein must be dismissed. It is so ordered. An exception is allowed.