Erling David LARSEN, Appellant,

v.

GENERAL MOTORS CORPORATION, a
Delaware Corporation, Appellee.

No. 18853.

United States Court of Appeals
Eighth Circuit.

March 11, 1968.

John P. Lommen, of King, MacGregor & Lommen, Minneapolis, Minn., for appellant; Norman W. Larsen, Minneapolis, Minn., on the brief.

Franklin D. Gray, of Cant, Haverstock, Beardsley, Gray & Plant, Minneapolis, Minn., for appellee; Richard A. Bowman, Minneapolis, Minn., on the brief.

Before BLACKMUN, GIBSON and HEANEY, Circuit Judges.

FLOYD R. GIBSON, Circuit Judge.

The driver of an automobile claims injury as a result of an alleged negligent design of the steering assembly of the automobile. The alleged defect in design did not cause the accident, and the manufacturer asserts the law imposes no duty of care in the design of an automobile to make it more safe to occupy in the event of a collision. The trial court agreed, rendering summary judgment in favor of the manufacturer, reported at 274 F.Supp. 461 (D.C.Minn.1967). We reverse and remand.

The plaintiff-appellant,[1] Erling David Larsen, received severe bodily injuries while driving, with the consent of the owner, a 1963 Chevrolet Corvair on February 18, 1964 in the state of Michigan. A head-on collision, with the impact oc-

---

1. The parties will be referred to as designated in the trial court or by name.

curring on the left front corner of the Corvair, caused a severe rearward thrust of the steering mechansim into the plaintiff's head. The Corvair was manufactured by General Motors Corporation and liability is asserted against General Motors on an alleged design defect in the steering assembly and the placement or attachment of the component parts of the steering assembly to the structure of the Corvair.[2]

The plaintiff does not contend that the design caused the accident but that because of the design he received injuries he would not have otherwise received or, in the alternative, his injuries would not have been as severe. The rearward displacement of the steering shaft on the left frontal impact was much greater on the Corvair than it would be in other cars that were designed to protect against such a rearward displacement. The plaintiff's complaint alleges (1) negligence in design of the steering assembly; (2) negligent failure to warn of the alleged latent or inherently dangerous condition to the user of the steering assembly placement; and (3) breach of express and implied warranties of merchantability of the vehicle's intended use.

General Motors contends it "has no duty whatsoever to design and manufacture a vehicle * * * which is otherwise 'safe' or 'safer' to occupy during collision impacts," and since there is no duty there can be no actionable negligence on its part to either design a safe or more safe car or to warn of any inherent or latent defects in design that might make its cars less safe than some other cars manufactured either by it or other manufacturers.

The District Court for the District of Minnesota rendered summary judgment in favor of General Motors on the basis that there was no common law duty on the manufacturer "to make a vehicle which would protect the plaintiff from injury in the event of a head-on collision" and dismissed the complaint. A timely appeal was filed. This is a diversity case in a requisite jurisdictional amount and the parties have stipulated that the law of Michigan applies.

Since a summary judgment was rendered on the pleadings and exhibits before the court under Rule 56, Fed.R.Civ.P., we will take the well pled allegations in the complaint at their face value and assume for purposes of discussion and decision that there was a defect in the design of the steering assembly of the Corvair. Then if there are no issues or any discernible theory on which the losing party could recover, a summary judgment is proper. However, a summary judgment proceeding does not provide a very satisfactory approach in tort cases. Williams v. Chick, 373 F.2d 330 (8 Cir. 1967).

The District Court found this case to be closely related to the factual situation of Evans v. General Motors Corporation, 359 F.2d 822 (7 Cir. 1966), cert. denied 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966), which held in a divided decision that a manufacturer is under no duty to make its automobile "accident-proof" or "fool-proof" nor to render its vehicle "more" safe where the danger to be avoided is obvious to all. The District Court discussed other cases, which will be set forth in this opinion, and concluded as follows:

"All of these factors when considered together lead to but one conclusion: The defendant G. M.'s duty toward the public is to design an automobile which is reasonably safe when driven and

2. The plaintiff alleges that the design and placement of the solid steering shaft, which extends without interruption from a point 2.7 inches in front of the leading surface of the front tires to a position directly in front of the driver, exposes the driver to an unreasonable risk of injury from the rearward displacement of that shaft in the event of a left-of-center head-on collision. So positioned it receives the initial impact of forces generated by a left-of-center head-on collision. The unabsorbed forces of the collision in this area are transmitted directly toward the driver's head, the shaft acting as a spear aimed at a vital part of the driver's anatomy.

which contains no latent or hidden defects which could cause an accident and subsequent injury * * *. No contention is here made * * * that any design defect caused the accident which allegedly resulted in the plaintiff's injuries. In view of this fact and because this Court believes that any standards in this area must be left to the Legislature, this court has no alternative but to find that the defendant was not negligent in its design and construction of the 1963 Corvair automobile in that it was under no duty to make a vehicle which would protect the plaintiff from injury in the event of a head-on collision." 274 F.Supp. at p. 464.

The District Court also held that there was no duty to warn since the law only requires a warning when the defects would render the product unsafe for its intended use and that its intended purpose was transportation.

■ Both parties agree that the question of a manufacturer's duty in the design of an automobile or of any chattel is a question of law for the court. The decisional law is in accord. Evans v. General Motors Corporation, supra; Schemel v. General Motors Corporation, 261 F.Supp. 134 (S.D.Ind.1966), aff'd 384 F.2d 802 (7 Cir. 1967); Kahn v. Chrysler Corporation, 221 F.Supp. 677 (S.D.Tex.1963).

General Motors contends that it has no duty to produce a vehicle in which it is safe to collide or which is accident-proof or incapable of injurious misuse. It views its duty as extending only to producing a vehicle that is reasonably fit for its intended use or for the purpose for which it was made and that is free from hidden defects; and that the intended use of a vehicle and the purpose for which it is manufactured do not include its participation in head-on collisions or any other type of impact, regardless of the manufacturer's ability to foresee that such collisions may occur. General Motors cites as supporting its contention, Evans v. General Motors Corporation, supra; Willis v. Chrysler Cor-

poration, 264 F.Supp. 1010 (S.D.Tex. 1967); Walz v. Erie-Lackawanna Railroad Company, CCH Prod.Liab.Rptr., ¶ 5722 (D.C.N.D.Ind.1967); Shumard v. General Motors Corporation, 270 F.Supp. 311 (S.D.Ohio 1967); Schemel v. General Motors Corporation, supra; Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802 (1950).

The plaintiff maintains that General Motors' view of its duty is too narrow and restrictive and that an automobile manufacturer is under a duty to use reasonable care in the design of the automobile to make it safe to the user for its foreseeable use and that its intended use or purpose is for travel on the streets and highways, including the possibility of impact or collision with other vehicles or stationary objects. Plaintiff's reliance is placed on Ford Motor Company v. Zahn, 265 F.2d 729 (8 Cir. 1959); Blitzstein v. Ford Motor Company, 288 F.2d 738 (5 Cir. 1961); Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4 Cir. 1962); Comstock v. General Motors Corporation, 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R. 2d 449 (Mich.1959).

There is a line of cases directly supporting General Motors' contention that negligent design of an automobile is not actionable, where the alleged defective design is not a causative factor in the accident. The latest leading case on this point is Evans v. General Motors Corporation, 359 F.2d 822 (7 Cir. 1966), cert. denied, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1966). A divided court there held that General Motors in designing an "X" body frame without perimeter support, instead of an allegedly more safe perimeter body frame, was not liable for the death of a user allegedly caused by the designed defect because the defendant's design could not have functioned to avoid the collision. The Court reasoned at pp. 824 and 825 of 359 F.2d:

"A manufacturer is not under a duty to make his automobile accident-proof or fool-proof; nor must he render the vehicle 'more' safe where the danger to be avoided is obvious to all.

Campo v. Scofield, 1950, 301 N.Y. 468, 95 N.E.2d 802, 804. Perhaps it would be desirable to require manufacturers to construct automobiles in which it would be safe to collide, but that would be a legislative function, not an aspect of judicial interpretation of existing law. Campo v. Scofield, supra, 805.

\* \* \* \* \* \*

"The intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur. \* \* \*"

A strong dissent was written by Judge Kiley in which he contended that General Motors had a duty in designing its automobile to use such care that reasonable protection would be given a user against death or injuries from foreseeable yet unavoidable accidents.

In General Motors Corporation v. Muncy, 367 F.2d 493 (5 Cir. 1966), cert. denied, 386 U.S. 1037, 87 S.Ct. 1476, 18 L.Ed.2d 600 (1967), the Court reversed the District Court judgment allowing recovery against General Motors for an allegedly negligent design of an ignition switch, which allowed the key to be removed when the motor was running. The Court held that under Texas law there was no liability for a defective design of the ignition switch and also found no actionable negligence in an alleged defective accelerator. No reasons are given for the decision on the ignition switch except that a state case involving the same parties had produced a similar ruling and a voluntary non-suit was taken before judgment was entered. The case was later refiled in the United States District Court. The Texas Court in Muncy v. General Motors Corp., 357 S.W.2d 430 (Tex.Civ.App.1962), held there was no showing of negligence as the parties had not shown "\* \* \* that the car in question was dangerous if used properly and in the manner and for the purpose for which it was intended \* \* \*"; and further held that the car was not being lawfully used under Texas law, which provided that no

person in charge of a vehicle shall permit it to stand unattended without first stopping the engine. The Court further noted that in the absence of evidence to the contrary it would not presume that General Motors designed the car for use in a manner violative of the law, or that it should have anticipated such illegal use as probable.

In Shumard v. General Motors Corporation, the United States District Court for the Southern District of Ohio, 270 F.Supp. 311 (1967), held there was no liability where the alleged design defects in a 1962 Corvair automobile caused it to erupt into flames on impact, killing the plaintiff's decedent. That Court said: "\* \* \* No duty exists to make an automobile fireproof, nor does a manufacturer have to make a product which is 'accident-proof' or 'fool-proof'. Campo v. Scofield, 301 N.Y. 468, 95 N.E. 2d 802 (1950) \* \* \*" and relied upon the *Evans* case for its holding that:

"\* \* \* The duty of a manufacturer in the design of automobiles does not include designing a 'fireproof' automobile or an automobile in which passengers are guaranteed to be safe from fire. A manufacturer has no duty to design an automobile that will not catch fire under any circumstances. The manufacturer's duty is to design an automobile which will not present a fire hazard during its normal intended operation."

Another United States District Court for the Southern District of Texas in Kahn v. Chrysler Corporation, 221 F.Supp. 677 (1963) held that the manufacturer was under no duty to so design its automobiles so that it would be safe for a child to ride his bike into it while it was parked. The child there struck the protruding fins of a 1957 Dodge. Relying on the Texas case of Muncy v. General Motors Corp., supra, the Court stated the manufacturer's duty of care "\* \* \* to be concomitant with normal use and for the ordinary purpose of the vehicle." The United States District Court for the Southern District of

Texas in Willis v. Chrysler Corporation, 264 F.Supp. 1010 (1967), in a Memorandum Opinion followed the rationale of the *Evans* and *Kahn* cases and held that Chrysler Corporation as an automobile manufacturer did not breach an implied warranty of fitness even though the design of the car allegedly allowed it to separate into two sections as a result of a high-speed collision. The predicate for its decision was that the design of the automobile was reasonably fit for the purpose for which it was intended, and the manufacturer's duty did not extend to designing an accident-proof or fool-proof vehicle, nor was it under a duty to design an automobile that would maintain its structural integrity on severe impact, citing the *Gossett* and *Evans* cases among others.

Since General Motors concedes on the negligence count that its duty of care extends to designing and constructing an automobile that is reasonably safe for its intended use of being driven on the roads and highways and that contains no latent or hidden defects which could cause an accident and subsequent injuries, it would be superfluous to review the decisions holding manufacturers liable for negligent construction or design that were the proximate cause of an accident and subsequent injuries. Since MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916), the courts have consistently held a manufacturer liable for negligent construction of an automobile. Elliott v. General Motors Corporation, 296 F.2d 125 (7 Cir. 1961), cert. denied, 369 U.S. 860, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962) ; Ford Motor Company v. Zahn, 265 F.2d 729 (8 Cir. 1959) ; Comstock v. General Motors Corporation, 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (1959) ; Parker v. Ford Motor Company, 296 S.W.2d 35 (Mo.1956) ; see 78 A.L.R. 2d 473, Anno.: Products Liability—Vehicles or Parts. And also other manufacturers, Lovejoy v. Minneapolis-Moline Power Implement Company, 248 Minn. 319, 79 N.W.2d 688 (1956) (broken flywheel on a tractor).

The Courts, however have been somewhat reluctant to impose liability upon a manufacturer for negligent product design in the automotive field. In Gossett v. Chrysler Corporation, 359 F.2d 84 (6 Cir. 1966) the Court reversed a judgment based on an alleged defectively designed truck hood latch that allowed the hood to spring open while the vehicle was in motion causing an accident, but did recognize a duty in connection with design, stating:

"The general rule may be stated as follows: It is the duty of a manufacturer to use reasonable care under the circumstances to so design his product as to make it not accident or foolproof, but safe for the use for which it is intended. This duty includes a *duty to design the product* so that it will *fairly meet any emergency of use* which can *reasonably be anticipated.* The manufacturer is not an insurer that his product is, from a design viewpoint, incapable of producing injury." (Emphasis supplied.)

The above statement is in line with the Restatement (Second), Torts, § 398 (1965), which reads:

"A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design."

The early case of Davlin v. Henry Ford & Son, 20 F.2d 317, at p. 319 (6 Cir. 1927), though it did not permit recovery, did recognize the duty of care in design by stating:

"Its duty was to use reasonable care in employing designs, selecting materials, and making assemblies, in the construction of a tractor, which would fairly meet any emergency of use which could reasonably be anticipated."

A pertinent case recognizing a duty of reasonable care in design is Carpini v. Pittsburgh and Weirton Bus Company, 216 F.2d 404 (3 Cir. 1954) where the Court permitted recovery for a defectively designed and placed pet cock in the undercarriage of a bus where the design and placement left the pet cock unprotected from debris on the road. The heavily overloaded bus in proceeding on a highway filled with rocks and debris, occasioned by a severe storm the night before, suffered a brake failure, causing an accident. The pet cock became disengaged by the debris, allowing the brakes to drain. In this case the defective design might be said to have caused the accident, though there was the questioned intervening cause of the improper use of the bus by overloading it. In any event this does not reach the plaintiff's factual situation of where the alleged negligent design was not a causative factor in the accident, but is contended to have severely enhanced plaintiff's injuries.

The Texas Court of Civil Appeals, in Railway Express Agency, Inc. v. Spain, 249 S.W.2d 644 (1952) sustained a judgment based on the negligent design of defendant's trucks, which were so designed as not to permit the giving of hand signals when the door of the truck on the driver's side was closed and noted that the concurring negligence of a third party which was required for defendant's negligence to become operative did not relieve the defendant of liability for its own negligence in design.

A case closely bearing on this precise point is Ford Motor Company v. Zahn, 265 F.2d 729 (8 Cir. 1959) where the plaintiff lost sight of one eye on being thrown against a defectively designed ash tray having a jagged edge. The ash tray had nothing to do in a causative way of setting up an emergency braking situation, which in turn projected the plaintiff into the ash tray, but the Court recognized a duty to use reasonable care in design, recognized the foreseeability of injury resulting from a defective ash tray so placed, and also recognized the duty resting on the manufacturer to make reasonable inspections or tests to discover defects. Judge Matthes stated the rule at p. 731:

> "By force of law there is imposed upon the manufacturer of an article for sale or use the duty to exercise reasonable care to prevent defective conditions caused by a miscarriage in the manufacturing process. This duty requires reasonable skill and care in the process of manufacture and for *reasonable inspection or tests* to discover defects."

■ Generally, as noted in 76 A.L.R. 2d 93, Anno.: Products Liability—Duty As To Design, the manufacturer has a duty to use reasonable care under the circumstances in the design of a product but is not an insurer that his product is incapable of producing injury, and this duty of design is met when the article is safe for its intended use and when it will fairly meet any "emergency of use" which is foreseeable. Davlin v. Henry Ford & Son, 20 F.2d 317 (6 Cir. 1927). This doctrine has even been extended to cover an unintended use where the injury resulting from that unintended use was foreseeable or should have been anticipated. Simpson Timber Co. v. Parks (9 Cir. 1965). (The original division's opinion, reported in CCH Prod. Liab.Rptr. ¶ 5498 (1965), was reversed by the Court en Banc at 369 F.2d 324 (1966), which in turn was vacated by the Supreme Court and remanded to pass upon issues not covered in its prior opinion, 388 U.S. 459, 87 S.Ct. 2115, 18 L.Ed.2d 1319 (1966)).

■■ Accepting, therefore, the principle that a manufacturer's duty of design and construction extends to producing a product that is reasonably fit for its intended use and free of hidden defects that could render it unsafe for such use, the issue narrows on the proper interpretation of "intended use". Automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. This intended use cannot be carried out

without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types. The manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident. O'Connell in his article "Taming the Automobile," 58 Nw.U.L.Rev. 299, 348 (1963) cites that between one-fourth to two-thirds of all automobiles during their use at some time are involved in an accident producing injury or death. Other statistics are available showing the frequency and certainty of fatal and injury-producing accidents. See footnote 4. It should be recognized that the environment in which a product is used must be taken into consideration by the manufacturer. Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4 Cir. 1962).

■ We think the "intended use" construction urged by General Motors is much too narrow and unrealistic. Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-

producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile, all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable.[3] The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.

■ We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable.[4]

■ The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities

---

3. As aptly and concisely phrased by Noel, "Manufacturer's Negligence of Design or Directions for Use of a Product," 71 Yale L.J. 816, 818 (1962) : "The manufacturer does not have to make a product which is 'accident-proof' or 'fool-proof'. Liability is imposed only when an unreasonable danger is created. Whether or not this has occurred should be determined by general negligence principles, which involve a balancing of the likelihood of harm, and the gravity of harm if it happens against the burden of the precautions which would be effective to avoid the harm."

4. National Safety Council, Accident Facts 40 (1966 ed.) reports: In 1965 motor vehicle accidents caused 49,000 deaths, 1.8 million disabling injuries. In automobile accidents since the advent of the horseless carriage up to the end of 1965, 1.5 million people have been killed in the United States. In 1966 the annual toll of those killed in automobile accidents rose to 52,500 and 1.9 million suffered disabling injuries.

of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts. We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel. Ford Motor Company v. Zahn, supra. Our streets and highways are increasingly hazardous for the intended normal use of travel and transportation. While advances in highway engineering and non-access, dual highways have considerably increased the safety factor on a miles traveled ratio to accidents, the constant increasing number of vehicles gives impetus to the need of designing and constructing a vehicle that is reasonably safe for the purpose of such travel. At least, the unreasonable risk should be eliminated and reasonable steps in design taken to minimize the injury-producing effect of impacts.

■ This duty of reasonable care in design rests on common law negligence [5] that a manufacturer of an article should use reasonable care in the design and manufacture of his product to eliminate any unreasonable risk of foreseeable injury. The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many common-sense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.

■ The courts since MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F., 696 (1916) have held that a manufacturer of automobiles is under a duty to construct a vehicle that is free of latent and hidden defects. We can perceive of no significant difference in imposing a common law duty of a reasonable standard of care in design the same as in construction. A defect in either can cause severe injury or death and a negligent design defect should be actionable. Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design. The manufacturer argues that this is difficult to assess. This is no persuasive answer and, even if difficult, there is no reason to abandon the injured party to his dismal fate as a traffic statistic, when the manufacturer owed, at least, a common law duty of reasonable care in the design and construction of its product. The obstacles of apportionment are not insurmountable. It is done with regularity in those jurisdictions applying comparative negligence statutes and in other factual situations as condemnation cases, where in some jurisdictions the jury must assess the value of the land before and after a taking and then

5. The Michigan case of Piercefield v. Remington Arms Company, Inc., 375 Mich. 85, 133 N.W.2d 129 (1965) applied the doctrine of strict liability in tort, and gave effect in a case involving a defective shotgun shell, to an implied warranty that a product is reasonably fit for the use intended. We, however think the duty in this evolving field of the law should and can rest, at this time, on general negligence principles, with each state free to supplement common law liability for negligence with a doctrine of strict liability for tort as a matter of social policy expressed by legislative action or judicial decision. The National Traffic and Motor Vehicle Safety Act of 1966 will result in the establishment of minimum safety standards the violation of which may consitute negligence *per se.*

assess a special benefit accruing to the remaining property of the condemnee.

■ General Motors in arguing against what it views as an expanded duty of a care in design makes the statement that this duty "must be considered in its application to all products. Automobile manufacturers cannot be made a special class." With this we quite agree. We think the duty of the use of reasonable care in design to protect against foreseeable injury to the user of a product and perhaps others injured as an incident of that use should be and is equally applicable to all manufacturers with the customary limitations now applied to protect the manufacturer in case of an unintended and unforeseeable use. The courts have imposed this duty, perhaps more readily against other manufacturers than against the automotive industry.[6]

We, therefore, do not think the automotive industry is being singled out for any special adverse treatment by applying to it general negligence principles in (1) imposing a duty on the manufacturer to use reasonable care in the design of its products to protect against an unreasonable risk of injury or enhancement of injury to a user of the product, and (2) holding that the intended use of an automotive product contemplates its travel on crowded and high speed roads and highways that inevitably subject it to the foreseeable hazards of collisions and impacts. Neither reason, logic, nor controlling precedents compel the courts to make a distinction between negligent design and negligent construction.

■ The manufacturer's duty to use reasonable care in the design and manufacture of a product to minimize injuries to its users and not to subject its users to an unreasonable risk of injury in the event of a collision or impact should be recognized by the courts. The manufacturers themselves have, in various public utterances in discussing automotive safety, expressed their concern for making safer vehicles.[7] And General Motors admits the foreseeability of accidents which are matters of public and common knowl-

---

6. See, Brandon v. Yale & Towne Manufacturing Co., 342 F.2d 519 (3 Cir. 1965)—failure to equip a forklift truck with adequate safety devices; Rosin v. International Harvester Company, 262 Minn. 445, 115 N.W.2d 50 (1962)—a defectively designed inner grease seal that resulted in a brake malfunctioning; Phillips v. Ogle Aluminum Furniture, Inc., 106 Cal.App.2d 650, 235 P.2d 857 (1951)—an inadequately designed chair; Simpson Timber Co. v. Parks (9 Cir. 1965), CCH Pro.Liab.Rptr. ¶5498—inadequately packaged doors for shipment (see comment herein for later developments in this case.).

7. C. A. Chayne, then vice-president in charge of the engineering staff of defendant General Motors, made a statement before the Subcommittee on Interstate and Foreign Commerce, House of Representatives, 84th Cong., 2nd Sess., on Investigation of Highway Traffic Accidents, Traffic Safety (1956), pp. 325–327:
"* * * it is always relatively easy to come up with a new design of an old part, or the design of a new feature or part, but until we are able to adequately test this part and have a pretty clear picture of what it will do under the circumstances to which it is subjected, we are exposing ourselves, the users of our products, and frequently others on the highways to risks."
K. A. Stonex, Automobile Safety Engineer for General Motors in an article "Vehicle Aspects of the Highway Safety Problem," appearing in TRAFFIC SAFETY, National Safety Council, Chicago, Illinois, June 1962, at p. 22, said: "The two-car collision * * * is so important statistically that car structure has to be evaluated under these conditions."
The president of General Motors in Hearings on the Federal Role in Traffic Safety Before the Subcommittee on Executive Reorganization of the Senate Committee on Government Operations, 89th Cong., 1st Sess. pt. 2 at 667 (1965), stated: "We recognize that the increasing movement of people and goods by motor vehicles contributes naturally to a higher possibility of accidents. This imposes new responsibilities on all of us. Automobile manufacturers must continue to seek all possible ways in which the built-in protection for car occupants can be improved."

edge over a long period of time.[8] Legal acceptance or imposition of this duty would go far in protecting the user from unreasonable risks. The normal risk of driving must be accepted by the user but there is no need to further penalize the user by subjecting him to an unreasonable risk of injury due to negligence in design.[9]

On the second count of plaintiff's petition alleging negligence in failure to warn of an alleged dangerous condition in vehicle design the same principles would apply. We think a cause of action is alleged and that under the law the manufacturer has a duty to inspect and to test for designs that would cause an unreasonable risk of foreseeable injury. Ford Motor Company v. Zahn, supra. The failure to use reasonable care in design or knowledge of a defective design gives rise to the reasonable duty on the manufacturer to warn of this condition.

 The duty of a manufacturer to test and to warn of defects in its product needs little elaboration. The Restatement (Second), Torts, § 395, comment (f) (1965) reads:

"* * * The particulars in which reasonable care is usually necessary for protection of those whose safety depends upon the character of chattels are * * * (4) the making of such inspections and tests during the course of manufacture and after the article is completed as the manufacturer should recognize as reasonably necessary to secure the production of a safe article. * * *"

See 2 Harper and James, "The Law of Torts," § 28.4, p. 1541; 76 A.L.R.2d 15,

Anno.: Products Liability—Duty to Warn. Almost any chattel or commodity is capable of inflicting injury; knives cut, axes split, dynamite explodes, food spoils, poison kills. Where the danger is obvious and known to the user, no warning is necessary and no liability attaches for an injury occurring from the reasonable hazards attached to the use of chattels or commodities; but where the dangerous condition is latent it should be disclosed to the user, and non-disclosure should subject the maker or supplier to liability for creating an unreasonable risk.

In Blitzstein v. Ford Motor Company, 288 F.2d 738, at p. 744 (5 Cir. 1961) the court held the evidence was sufficient to present a jury issue on whether the supplier Ford Motor Company was negligent in failing to exercise reasonable care to warn of a dangerous condition caused by designing a non-ventilated motor car trunk in which an undetectable leaky gas tank was located, stating:

"We think that a jury could reasonably have found that the American Ford Company was negligent in marketing a product which was inherently dangerous, of which danger it should have been aware from its long experience in the design and manufacture of automobiles, and that American Ford failed to exercise reasonable care to inform the buying public of this dangerous condition. * * *"

 If, because of the alleged undisclosed defect in design of the 1963 Corvair steering assembly, an extra hazard is created over and above the normal hazard, General Motors should be liable

---

8. Goddard & Haddon in their article "Passenger Car Design in Highway Safety" published by Consumers Union of U.S., Inc. make the statement that: "Between one-fourth and two-thirds of all vehicles manufactured are at sometime during their subsequent use involved in the tragedy of human injury and death. Consequently the anticipation of this result by both designer and manufacturer is mandatory."

9. The *Evans* case has been the subject of a number of Law Review articles or

comments and has generally received adverse comments as being a too restrictive declaration of general negligence principles. See, 80 Harv.L.Rev. 688 (1967) "Liability of Maker of Chattel"; 32 Iowa L.Rev. 953 (1967) "Liability for Negligent Automobile Design"; Nadler and Page, "Automobile Design and the Judicial Process," 55 Calif.L.Rev. 645, 655 (1967).

for this unreasonable hazard. Admittedly, it would not sell many cars of this particular model if its sale's "pitch" included the cautionary statement that the user is subjected to an extra hazard or unreasonable risk in the event of a head-on collision. But the duty of reasonable care should command a warning of this latent defect that could under certain circumstances accentuate the possibility of severe injury. See 2 Harper and James, "The Law of Torts," § 28.3–28.9.

 On the issue of strict liability or implied warranty of merchantability for intended use, we make no comment as our holding of sufficiency of counts one and two are dispositive. The doctrine of strict liability is one of policy for the various states and the National Congress, and we do not think there has been a sufficient showing on the Michigan law as respects this point, particularly in the automotive field. The *Piercefield* case cited in footnote 5 relates to an inherently dangerous explosive, and we do not know whether the Michigan courts would extend this doctrine to automobiles, which the courts have at times viewed both as an inherently dangerous instrument and not an inherently dangerous instrument. See, Comstock v. General Motors Corporation, 358 Mich. 163, 99 N.W.2d 627, 78 A.L.R.2d 449 (Mich. 1959) (an automobile with defective brakes is a dangerous instrumentality), and Gossett v. Chrysler Corporation, 359 F.2d 84 (6 Cir. 1966) (an automobile is not a dangerous instrumentality under Ohio law.)

 General Motors contends that any safety standards in design and equipment should be imposed as envisioned by the National Traffic and Motor Vehicle Safety Act of 1966 (Pub.L. 89–563), 80 Stat. 718, 15 U.S.C.A. § 1381 et seq. Recognizing the need to reduce traffic accidents and deaths and injuries resulting therefrom, Congress found it necessary to establish motor vehicle safety standards, and by this Act set up the machinery and administrative process to establish minimum safety standards. The purpose of this Act is manifest and the Congress recognizes in § 1391(1) that the public should be protected against unreasonable risks of accidents occurring as a result of the design, construction or performance of motor vehicles and also be protected against unreasonable risk of death or injury in the event accidents do occur. Section 108(c) of the Act, 15 U.S.C. § 1397(c), expressly negatives any intention of Congress to acquire exclusive jurisdiction in this field and leaves the common law liability intact. Subsection (c) reads: "(c) Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law."

 It is apparent that the National Traffic Safety Act is intended to be supplementary of and in addition to the common law of negligence and product liability. The common law is not sterile or rigid and serves the best interests of society by adapting standards of conduct and responsibility that fairly meet the emerging and developing needs of our time. The common law standard of a duty to use reasonable care in light of all the circumstances can at least serve the needs of our society until the legislature imposes higher standards or the courts expand the doctrine of strict liability for tort. The Act is a salutary step in this direction and not an exemption from common law liability.

For the reasons set forth, we reverse and remand for proceedings not inconsistent with this opinion.