**Wilbur HIGGS and Mary Higgs, Plaintiffs,**

**v.**

**GENERAL MOTORS CORPORATION, Defendants.**

**David L. THOMAS, b/n/f and Natural Guardian Gordon Thomas and Gordon Thomas, Individually, Plaintiffs,**

**v.**

**SUBARU OF AMERICA, INC. and Fuji Heavy Industries, Ltd., Defendants.**

**Civ. Nos. 3–84–431, 3–84–787.**

United States District Court, E.D. Tennessee, N.D.

Dec. 9, 1985.

J. D. Lee, Knoxville, Tenn., for Higgs.

Sidney W. Gilreath, Knoxville, Tenn., for Thomas.

Robert Pennington, Madisonville, Tenn., for Thomas.

Robert R. Campbell, Knoxville, Tenn., for General Motors Corp.

Louis C. Woolf, Knoxville, Tenn., for Subaru of America, Inc. and Fuji Heavy Industries, Ltd.

## MEMORANDUM

JARVIS, District Judge.

These are products liability actions in which the plaintiffs seek damages for personal injuries and/or property damages as the result of automobile accidents. In the *Higgs* case, plaintiffs assert and allege that defendant's truck was defective and unrea-

sonably dangerous because: (1) it had a defective steering column that was the proximate cause of plaintiffs' injuries; and (2) it was defective and unreasonably dangerous because it was not equipped with airbags which would have prevented, or at least mitigated, plaintiffs' injuries. In the *Thomas* case, plaintiffs' cause of action is based on allegations that the Subaru vehicle involved in that accident was defective and unreasonably dangerous because it, too, was not equipped with airbags. This matter is presently before the Court on motion of defendant General Motors Corporation for partial summary judgment in the *Higgs* case and on both defendants' motion for summary judgment in the *Thomas* case, alleging that the complaints fail to state a cause of action as a matter of law. In short, these defendants say that plaintiffs' claims that the subject vehicles did not contain airbags does not constitute either a design or manufacturing defect under Tennessee law upon which recovery can be based. Additionally, defendant Fuji Heavy Industries, Ltd. ["Fuji"] has filed a motion to dismiss for lack of personal jurisdiction. However, these cases have only been consolidated for oral argument on the common issues of defendants' motions regarding airbags.

### Facts

For purposes of this summary judgment motion, the facts are assumed to be as asserted by the plaintiffs. *Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir.1983). In the *Higgs* case, plaintiffs allege that Wilbur Higgs ["Higgs"] was injured while driving a 1979 General Motors pick-up truck, which contained, as standard equipment, a three-point lap-shoulder safety belt for front outboard occupants, a lap belt for any central passenger, and warnings, including a red light on the instrument panel and an audible buzzer designed to encourage belt use. [Doc. #14, Exh. C]. On August 9, 1982, Higgs, a 61-year-old veterinarian, was proceeding around a curve in his pick-up truck on Highway #68 in Monroe County, Tennessee. He was traveling at approximately 45 to 50 m.p.h. when the truck's steering mechanism allegedly locked and the pick-up went off the road onto the right berm. He testified that while he was braking and in the process of gradually bringing his truck to a stop, the vehicle struck a hidden culvert, causing the steering to unlock. The truck then swerved back across the road and struck a tree. Higgs, who was not wearing his lap-shoulder belt, sustained two broken ribs and injuries to his neck and back. [*Id.*, Exh. D, pgs. 37–50].

In the *Thomas* case, the minor plaintiff alleges that he was injured in an automobile collision which occurred on October 22, 1983, in Blount County, Tennessee on Sevierville Pike near the intersection of Walnut Street. At the time of the accident, the minor plaintiff was driving a 1979 two-door Subaru. As a result of the accident, he was rendered a complete quadraplegic.

While all plaintiffs seek recovery under the doctrine of strict liability as set forth in § 402A of the Restatement of the Law of Torts,[1] the gravamen of plaintiffs' causes of action against the defendants are simply that the respective vehicles did not contain an airbag and, therefore, the vehicles are defective and unreasonably dangerous. Indeed, it makes no difference whether the complaint is couched in terms of negligence, strict liability or breach of warranty, it has generally been held in the State of Tennessee that in order for a plaintiff to recover under any theory of product liability, the plaintiff must establish that the product was defective and unreasonably dangerous at the time the product left the control of the manufacturer. *See, e.g., Ellithorpe v. Ford Motor Company*, 503 S.W.2d 516 (Tenn.1973).

It is the general contention of the plaintiffs that the subject vehicles were in a defective and unreasonably dangerous condition because they were incapable of providing reasonable protection to occupants

---

1. In the *Thomas* case, plaintiffs are also seeking recovery for breach of warranty under T.C.A. §§ 47-2-313, 314 and 315.

during crashes. In short, plaintiffs allege that the vehicles are not "crashworthy" because they lacked adequate passive restraint systems. An automotive safety device is characterized as "passive" rather than "active" when it requires no independent action by occupants to render it effective. Occupants who are, for example, tired, distracted, lazy, absent minded or even inebriated, can remain "passive" and will have protection from foreseeable crashes as a result of the following components which are encompassed within the definition of "passive" restraint system: Padded and contoured interior surfaces, windshield, roof, seats, head restraints, arm rests, energy absorbing steering column, etc. On the other hand, "active" restraint systems include door locks and manually fastened seat belts.

Plaintiffs maintain that an especially effective component of passive restraint systems, if not the most effective component, which can be installed on automobiles is an "airbag" or "air cushion". An airbag remains concealed within the dashboard and steering column of an automobile until activated by impact, when it inflates to cushion vehicle occupants from the forces of the collision. The plaintiffs contend that airbags provide superior protection in front or front angle crashes, as were involved in the instant cases.

It is uncontroverted that the airbag controversy has existed for many years. A patent was issued for an automatically inflating safety cushion as early as the 1950's, and during the 1960's both the automotive industry and government worked on airbag research and product development. As a result, the Department of Transportation issued a standard that required installation of passive restraints in new automobiles in 1970. However, the National Highway Traffic Safety Administration ["NHTSA"] has expressly decided not to require airbags in automobiles as set forth in the most recent version of FMVSS 208. *See,* 49 Fed.Reg. 28962, 29000, 29008–09 (1984). Presently, airbags are only available to purchasers in rare instances, for example, in certain Mercedes Benzs. Otherwise, consumers do not have a choice if they want to order an automobile with an airbag or air cushion. However, the NHTSA has concluded that the three-point belt is more effective than an airbag alone and as effective as an airbag in combination with a lap belt. 49 Fed.Reg. 28962, 28985 (1984). Moreover, the NHTSA has concluded that the three-point belt provides the "quickest, least expensive way by far to significantly reduce fatalities and injuries". *Id.,* at 28985, 28997. As stated earlier, the plaintiffs allege that the subject vehicles are not "crashworthy". This term refers to the relative ability of a vehicle to protect its occupants from injuries due to "second impact", which refers to the impact of occupants against objects inside or outside of a vehicle as a result of the vehicle's collision with another object. *Higginbotham v. Ford Motor Company,* 540 F.2d 762, 766 n. 4 (5th Cir.1976).

The landmark case that first announced the crashworthiness doctrine was *Larsen v. General Motors Corporation,* 391 F.2d 495 (8th Cir.1968). That court stated, "[t]he sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or, as safe as is reasonably possible under the state of the art." *Id.,* at 502. The *Larsen* court held that an automobile manufacturer is obligated "to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of collision." *Id.* The *Larsen* court further concluded that:

> We perceive of no sound reason, either in logic or experience, nor any command and precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. Manufacturers are not insurors, but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel.

*Id.,* at 503.

The rationale of *Larsen* was fully embraced by the Tennessee Supreme Court in *Ellithorpe, supra,* 503 S.W.2d 516. However, the Court held in *Ellithorpe* that the

"duty to minimize the harm of inevitable accidents by utilizing reasonably safe design ... does not require construction and design of an automobile that will be absolutely safe in a collision. *Id.,* at 519.

This Court would note that the law of crashworthiness reflects that second collision liability has been most consistently recognized in cases involving an allegedly defective component which is itself the instrumentality causing the enhancement of the injury. This line of cases is exemplified by *Larsen, supra,* (rear displacement of steering assembly) and *Ellithorpe, supra,* (contact with prongs on horn button). Plaintiffs also cite other cases which fall into this category, such as *Roberts v. May,* 41 Colo.App. 82, 583 P.2d 305 (1978) (dashboard); *Huddell v. Levin,* 537 F.2d 726 (3rd Cir.1976) (head restraint); *Cryts v. Ford Motor Company,* 571 S.W.2d 683 (Mo.App.1978) (arm rest); and *Shipp v. General Motors Corporation,* 750 F.2d 418 (5th Cir.1985) (roof). In these cases, automobile manufacturers have been held to have a duty to minimize the danger of harm arising from those items of equipment installed by it which possess a potential to be instruments of injury.

The second broad category of crashworthiness cases seems to involve those in which the alleged defect consists of a failure to equip the vehicle with a device which would have prevented enhancement of the injury. However, this Court would note that there seems to be no consensus among the courts on the development of the law in this area. For example, in some jurisdictions a failure to install a roll bar has been actionable. *Turner v. General Motors Corporation,* 514 S.W.2d 497 (Tex.Civ.App. 1974). In other states, the absence of a roll bar has been held not to be a defect. *Delvaux v. Ford Motor Company,* 764 F.2d 469 (7th Cir.1985) (Wisconsin law); *cf., Curtis v. General Motors Corporation,* 649 F.2d 808 (10th Cir.1981) (Colorado law).

Likewise, the absence of ROPS (roll over protective device) on heavy machinery has been the basis for liability in some states, *see, Wagner v. International Harvester Company,* 611 F.2d 224 (8th Cir.1979) (Minnesota law), but not in others, including Tennessee. *See, e.g., Orfield v. International Harvester Company,* 535 F.2d 959 (6th Cir.1976). However, this Court is aware of no reported case in which a court has held that liability could be imposed upon a manufacturer for failing to equip a vehicle with a specific safety device designed to prevent enhancement of injury as a result of a particular circumstance or condition, if that manufacturer did in fact provide a different device to serve the same end. In a recent unreported Florida trial court case, *Lynch v. Mims,* Case Number GCG85–0019, Polk County, Florida, Circuit Court, Judge Randall McDonald denied a motion to dismiss a no airbag claim. However, in that case, there is no indication that the court had before it any allegations concerning operable belt restraints in the subject vehicle at the time of the accident. The facts of the instant cases are otherwise.[2]

In the cases *sub judice,* because the subject vehicles were manufactured in 1979 and because the accidents occurred in 1982 or 1983, these cases are governed by the Tennessee Products Liability Act of 1978, which is set forth at *Tennessee Code Annotated* § 29–28–101, *et seq.* ["the Act"]. The Act sets forth the following pertinent definitions:

"Product liability action" for purposes of this chapter shall include all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. It shall include, but not be limited to, all actions based

---

**2.** *Cf., Evers v. General Motors Corporation,* No. 81–1108–Civ. T–GC, slip op. (M.D.Fla., Aug. 3, 1984), aff'd, 770 F.2d 984 (11th Cir., 1985), and *Kern v. General Motors Corporation,* Civ.Action No. 83 CV 9111, slip op. (Colo.Dist.Ct., July 9, 1985) (App. pending). In both *Evers* and *Kern,*

the existence of lap-shoulder belts in the subject vehicles was before the Court, and summary judgment was granted to General Motors on plaintiffs' claims premised upon the absence of passive restraints.

upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied, breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation, concealment or non-disclosure, whether negligent or innocent; or under any other substantive legal theory in tort or contract whatsoever. (T.C.A. § 29–28–102(6)).

"Defective condition" means a condition of a product that renders it unsafe from normal or anticipatable handling and consumption. (T.C.A. § 29–28–102(2)).

"Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge, to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller assuming that he knew of its dangerous condition. (T.C.A. § 29–28–102(8)).

Additionally, the Act specifically states that:

A manufacturer or seller of products shall not be liable for any injury to person or property caused by the product unless the product is determined to be in a defective condition or unreasonably dangerous at the time it left the control of the manufacturer or seller. (T.C.A. § 29–28–105(a)).

■ In essence, the above definitions make it clear that the "consumer expectation" test has been codified in Tennessee statutes. In order to impose liability on a manufacturer or seller, the product in question must be shown to be either (1) "in a defective condition" or (2) "unreasonably dangerous". The definitions of either of those terms as set forth hereinabove focuses on what is anticipated or contemplated by the ordinary consumer.

In the instant cases, obviously the plaintiffs as "ordinary consumers" did not expect airbags to pop out of the dash; however, they did expect these vehicles to be equipped with some sort of restraint system which met government standards. The evidence in these cases indicates that both consumer expectations and government standards were met.

■ While recognizing that the "consumer expectation" test has been codified in the Act, plaintiffs would urge this Court to employ other analytical tools, such as the "risk/utility" test or some other method to allow the balancing of interests in conjunction with the "consumer expectation" test. In light of the clear language of the Act, however, this Court declines to go any further than the Tennessee legislature intended the courts to go when it adopted the Act. Under this Act, plaintiffs must prove in a products liability action that the condition complained of is beyond contemplation of the ordinary consumer, with the ordinary knowledge common to the community as to its characteristics. Under the facts of the instant cases, the plaintiffs have failed to meet this burden of proof as a matter of law.

Accordingly, the defendant's motion for partial summary judgment must be granted in the *Higgs* case, and the motion to dismiss must be granted in the *Thomas* case.

Order accordingly.