Robert EULER, committee for Michael
L. Euler, Plaintiff,

v.

AMERICAN ISUZU MOTORS,
INC., et al., Defendants.

Civ. A. No. 91–0001–C.

United States District Court,
W.D. Virginia,
Charlottesville Division.

Nov. 30, 1992.

Warren D. Harless, Christian, Barton, Epps, Brent & Chappell, Richmond, VA, C. Michael Bee, Hill, Peterson, Carper, Bee & Deitzer, Charleston, WV, for plaintiff.

Fred G. Wood, Jr., Charlottesville, VA, Rosewell Page, III, Christopher C. Spencer, McGuire, Woods, Battle & Boothe, Richmond, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter is before the court on defendants' motion for partial summary judgment. The defendants seek summary judgment to the extent that the plaintiff relies on the so-called "crashworthiness" doctrine. For the reasons stated herein, defendants' motion is denied.

### I.

On January 24, 1989, a 1986 Isuzu Trooper skidded off Route 620 near Scottsville, Virginia, rolled over, and crashed on its roof into a tree. At impact, the roof of the vehicle crushed 2 to 2½ feet into the passenger compartment. The driver was killed and the two other occupants, including Michael L. Euler, were seriously injured. No other vehicle was involved.

The plaintiff filed suit on behalf of Euler to recover damages from American Isuzu Motors, Inc., Isuzu Motors, Ltd., and George Rennick Buick, Inc., a/k/a Town & Country Buick–Isuzu, Inc. (collectively "defendants"). Charging negligence, negligent failure to warn, and breach of the implied warranty of merchantability, the

plaintiff alleges that the defendants produced and provided a vehicle with design defects, including an improper brake system, insufficient stability, inadequate roof structure and supports, and inadequate warnings. In particular, the plaintiff contends that the rear brakes prematurely locked during braking, thereby causing the driver to lose control. While the plaintiff does not assert that the allegedly defective roof caused the accident, he does claim that the allegedly defective roof caused, or severely enhanced, Euler's head and spinal cord injuries.

## II.

As framed by the defendants, the issue before the court is whether Virginia has adopted the "crashworthiness" doctrine, and, if not, whether this court should predict that the Virginia Supreme Court would adopt that doctrine. This court will address the issue in terms of "crashworthiness," but notes that "crashworthiness," "second collision," and "enhanced injury" have been used interchangeably by the courts.

■ As a preliminary matter, the court must define the doctrine. The parties have offered differing descriptions of the "crashworthiness" theory of liability. In opposing application of the doctrine, the defendants assert that the doctrine "imposes a duty on a manufacturer to design a car that will prevent or lessen injuries in a collision." Defendants' Brief at 2. On the other hand, the plaintiff maintains that the doctrine imposes on a manufacturer "a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision." *Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir.1968).

It is clear that the plaintiff does not invoke the heightened duty suggested by the defendants. Thus, that standard is not before the court. Rather, the court will consider the duty suggested by the plaintiff, which the court accepts as a proper statement of the "crashworthiness" doctrine.

## III.

Neither the Virginia General Assembly nor the Virginia Supreme Court has explicitly adopted the "crashworthiness" doctrine. Indeed no Virginia court has even addressed the doctrine, so far as this court has been able to determine. Accordingly, as a federal court sitting in diversity, this court must predict whether the Virginia Supreme Court would adopt the "crashworthiness" doctrine.

### A.

The "crashworthiness" doctrine originated in *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir.1968). For purposes of this opinion, the facts of *Larsen* are indistinguishable from the facts of this case. Larsen, the driver of a 1963 Chevrolet Corvair, claimed injury as a result of an allegedly defectively designed steering assembly. Although he did not contend that the steering assembly caused the accident, he did contend that because of the defective design, he received injuries he would not have otherwise received, or at least more severe than he would have otherwise received. The district court granted summary judgment in favor of the automobile manufacturer.

General Motors admitted that it had a duty "to produc[e] a vehicle that is reasonably fit for its intended use or for the purpose for which it was made." *Id.* at 498. But GM argued that "the intended use of a vehicle and the purpose for which it is manufactured do not include its participation in head-on collisions or any other type of impact, *regardless of the manufacturer's ability to foresee that such collisions may occur.*" *Id.* Larsen, on the other hand, maintained that the intended use of an automobile—safe travel on the streets and highways—includes the possibility of collision or impact with other cars or stationary objects. *Id.*

After an exhaustive review of the cases, the Eighth Circuit agreed with the broader interpretation of "intended use." In reversing the district court, the Eighth Circuit formulated what has come to be known as the "crashworthiness" doctrine:[1]

---

1. *Larsen* itself did not use the term "crashwor- thiness."

Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile all are foreseeable. Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable. The sole function of an automobile is not just to provide a means of transportation, it is to provide a means of safe transportation or as safe as is reasonably possible under the present state of the art.

We do agree that under the present state of the art an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water, but such manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. Collisions with or without the fault of the user are clearly foreseeable by the manufacturer and are statistically inevitable.

*Id.* at 502 (footnotes omitted).

The quoted passage exposes the underpinnings of the "crashworthiness" doctrine. First, the doctrine is based on traditional negligence principles. Second, the doctrine depends on two established propositions: that the intended use or purpose of an automobile is safe travel on the streets and

highways and that automobile accidents are foreseeable. But of course, *Larsen* does not resolve the case at bar. This court must look to Virginia law.

### B.

■ The Virginia Supreme Court recognizes traditional negligence principles. While a manufacturer "is not required to design and market an accident-proof product," *Turner v. Manning, Maxwell & Moore,* 216 Va. 245, 217 S.E.2d 863, 868 (1975), a manufacturer is required to exercise ordinary care to design a product that is reasonably safe for its intended purpose. *Id.; Besser Co. v. Hansen,* 243 Va. 267, 415 S.E.2d 138, 143–44 (1992).

Without disputing these basic principles, the defendants argue that the Virginia Supreme Court has refused to create a duty to design a product that would prevent or lessen an injury. As noted above, however, the plaintiff does not attempt to hold the defendants to such a duty. Moreover, both *Turner* and *Besser,* upon which the defendants primarily rely, support plaintiff's position.

In *Turner v. Manning, Maxwell & Moore,* 216 Va. 245, 217 S.E.2d 863 (1975), a pipe foundry employee was injured when he was struck on the head by a hoist, which became unhooked and fell from its support. On the day of the accident, he was working in a cupola, a cylindrical structure in which scrap metal was melted. Molten metal flowed out through a hole in the floor of the cupola, leaving behind coke and other debris. After the melting operation was completed, metal doors in the bottom of the cupola dropped down to allow the waste to fall out of the cupola. Occasionally, a "freeze-up" occurred in the cupola when molten metal cooled and fused into blocks. In that event, the cupola was shut down and cooled and employees entered the cupola to break apart and remove the blocks.

The foundry acquired a hoist for the purpose of closing the metal doors in the bottom of the cupola. The doors weighed more than 800 pounds but the hoist was rated for a capacity load of 1000 pounds. The hoist was suspended from a boom by

an "open-throated" hook, that is, a hook without a safety latch across its mouth.

At the time of the accident, Turner and two other employees were cleaning up after a freeze-up. The two other employees were using the hoist to move some of the metal blocks. One hooked the lower hook of the hoist into a crack or crevice of a block and signalled the other to activate the hoist. When the hoist was activated, the lower hook slipped, the resulting backlash dislodged the "open-throated" upper hook, and the hoist fell on Turner.

Turner filed suit against the hoist manufacturer on theories of negligence, negligent failure to warn, and breach of the implied warranty of merchantability. The trial court struck Turner's evidence at the conclusion of all the evidence.

On appeal, the Virginia Supreme Court affirmed. Although the court noted that the accident would not have occurred if the hoist had been equipped with an upper safety hook, the court declined to impose negligence liability on that basis. Said the court:

> The manufacturer is not an insurer and is not required to design and market an accident-proof product. The manufacturer is under a duty to exercise ordinary care to design a product that is reasonably safe for the purpose for which it is intended. There was no evidence on which a jury could have relied to find that the hoist in this case was not reasonably safe for its intended use. Moreover, the evidence showed that there was no need for an upper safety hook if the product was used for its intended purpose. It was the *unforeseeable misuse* of the hoist, not the absence of the upper safety hook, that caused the accident.

217 S.E.2d at 868 (emphasis added) (citations omitted).

Similarly, the court refused to impose liability for breach of warranty or negligent failure to warn. First, "[t]he implied warranty does not apply when the product is being used in a manner or for a purpose for which it was not intended." *Id.* at 869. Second, "[a]s the evidence shows that the hoist was reasonably safe for its intended purpose or for some other reasonably fore-seeable purpose, but that it was being misused at the time of the accident, . . . there was no duty to warn." *Id.* Thus, the "unforeseeable misuse" of the product was central to the court's ruling on all three liability theories.

*Besser Co. v. Hansen*, 243 Va. 267, 415 S.E.2d 138 (1992), involved an even more complicated set of facts. In that case, an employee at a concrete block manufacturing plant was injured when he became caught between a rack loaded with concrete blocks and an autoclave in which the blocks were to be cured. The rack was being moved by a "transfer car" manufactured by Besser. At the time of the accident, Hansen had left unattended the transfer car control panel to recouple two of the racks which he had previously uncoupled. Hansen sued the transfer car manufacturer on theories of negligence and breach of warranty and the jury returned a verdict in his favor.

As in *Turner*, the Virginia Supreme Court did not hold the manufacturer liable. Again, however, the court emphasized that the product was unforeseeably misused. The evidence showed that Hansen failed to turn the transfer car control switch from "automatic" to "off," and also that he failed to look at a warning light on the transfer car control panel that would have verified that the switch was not in the "off" position. Accordingly, as to the negligence claim, the court stated:

> The car would become dangerous only if the operator placed himself in the path of the racks while he had the three-way switch in the automatic mode. Besser had no reason to know or foresee that an operator would put himself in the path of the racks without seeing that he had the switch turned to "off."

415 S.E.2d at 144. Moreover, as to the breach of warranty claim, the court noted that it was the plaintiff's "unforeseeable misuse of the switch and warning light that caused the accident." *Id.*

The significance of the distinction between unforeseeable misuse and foreseeable use, or even foreseeable misuse, is still more apparent in *Featherall v. Firestone*

*Tire & Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979). In that case, a bottling company employee sued a syrup tank manufacturer, a syrup tank lid manufacturer, and a pressure regulator manufacturer. The Virginia Supreme Court held that the lid manufacturer was not liable for either negligent failure to warn or breach of warranty where the lid was unforeseeably misused. *Id.* 252 S.E.2d at 367. However, in the same case, the court held that the pressure regulator manufacturer could be liable for negligent failure to warn even though the employee misused the regulator, where that misuse was foreseeable. *Id.* at 369. The court explained that the foreseeable misuse of the regulator was in "marked contrast" to the unforeseeable misuse of the lid. *Id.*

The clear import of *Turner*, *Featherall*, and *Besser* is that a manufacturer may avoid liability when his product is unforeseeably misused. The equally clear implication of these cases is that, assuming satisfaction of the other elements of a negligence claim, a manufacturer may be held liable when his product is foreseeably used or even foreseeably misused. Accordingly, this court must determine whether or not the Isuzu Trooper was being unforeseeably misused in this case.

### C.

It is settled beyond doubt that automobile accidents are reasonably foreseeable. Tens of thousands of people are killed in motor vehicle accidents each year and many more are injured.[2] In addition, federal motor vehicle safety standards rest on the recognition that motor vehicle crashes will occur. For example, some stated purposes of the standards are "to afford impact protection for occupants," 49 C.F.R. § 571.201; "to reduce the number of deaths of vehicle occupants, and the severity of injuries, by specifying vehicle crashworthiness requirements," 49 C.F.R. § 571.208; "to reduce the risk of serious and fatal injury to occupants of passenger cars in side impact crashes by specifying vehicle crashworthiness requirements ...,  by specifying strength requirements for

side doors, and by other means," 49 C.F.R. § 571.214; "to reduce deaths and injuries due to the crushing of the roof into the passenger compartment in rollover accidents," 49 C.F.R. § 571.216; and "to reduce deaths and injuries occurring from fires that result from fuel spillage during and after motor vehicle crashes," 49 C.F.R. § 571.301. Moreover, like government safety standards, industry standards are based on the realization that motor vehicle crashes will occur. Finally, the Virginia General Assembly has acknowledged the foreseeability of automobile accidents. For instance, Virginia Code § 46.2–1093 dictates that seat belts "shall be designed and installed in such manner as to prevent or materially reduce movement of any person ... in the event of collision or upset of the vehicle."

In this light, it appears to the court that the Isuzu Trooper was not being unforeseeably misused. Regardless of whether the brakes failed, as the plaintiff contends, or whether the driver drove off the road, as the defendants counter, the Trooper was being used in a foreseeable manner, that is, as a means of transportation on a public highway. And, even though the defendants did not design the Trooper for the purpose of landing on its roof, such an occurrence was foreseeable.

Having demonstrated that the Virginia Supreme Court recognizes traditional negligence principles, and having recognized that automobile accidents are reasonably foreseeable, this court can only conclude that an automobile manufacturer is under a duty to exercise ordinary care to design a vehicle that is reasonably safe in the event of an accident. In effect, then, this court predicts that the Virginia Supreme Court would adopt the "crashworthiness" doctrine, as qualified *infra*.

The court does not hold that every automobile accident is foreseeable. Nor does the court impose a duty on a manufacturer to design a car that will prevent or lessen every injury in a collision. Furthermore, the court does not create a new cause of

---

**2.** In 1989, for example, there were 46,900 fatalities and 1,700,000 disabling injuries incurred in motor vehicle accidents in the United States, according to the National Safety Council.

action. Whether called "crashworthiness," "second collision," or "enhanced injury," the cause of action is simply negligence. The plaintiff still must prove the elements thereof.

## IV.

■ The defendants argue that the Fourth Circuit would hold that Virginia would not adopt the "crashworthiness" doctrine. In support of this contention, the defendants direct the court to a trio of Fourth Circuit cases decided under North Carolina law. *See Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981); *Martin v. Volkswagen of America, Inc.,* 707 F.2d 823 (4th Cir.1983); *Erwin v. Jeep Corp.,* 812 F.2d 172 (4th Cir.1987). The three cited cases declined to hold an automobile manufacturer liable for a defect which neither caused nor contributed to cause the collision.

This court, when interpreting Virginia law, is no more bound by Fourth Circuit decisions interpreting North Carolina law than it is by decisions of the North Carolina courts. More importantly, a North Carolina appellate court has rejected the three Fourth Circuit opinions. In *Warren v. Colombo,* 93 N.C.App. 92, 377 S.E.2d 249 (1989), the court determined that a cause of action for "enhanced injuries" is permissible under North Carolina law.

In this connection, this court notes that the Fourth Circuit and a federal district court have addressed the "crashworthiness" doctrine under Virginia law. In *Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1069–70 (4th Cir.1974), the Fourth Circuit assumed for purposes of its decision that the "crashworthiness" doctrine would apply in Virginia. However, the Fourth Circuit concluded that even under a "crashworthiness" theory, the evidence in that case did not support the trial court's finding of liability. In *Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368, 1370 (E.D.Va.1978), the district court relied on *Dreisonstok* as a "guidepost" in ascertaining Virginia law on the admissibility of seat belt evidence. The *Wilson* court accurately reported that *Dreisonstok* "assumed that the trend of Virginia decisions is that Virginia joins those jurisdictions which impose liability upon the manufacturer for negligent design in failing to take reasonable precautions against unreasonable risks of harm to passengers by reason of a collision." 445 F.Supp. at 1371. While neither *Dreisonstok* nor *Wilson* decides the question before this court, neither forecloses this court's decision.

In short, the court is not persuaded by defendants' argument on the basis of Fourth Circuit cases decided under North Carolina law.

## V.

■ In addition to a negligence claim, the plaintiff has brought claims for negligent failure to warn and breach of the implied warranty of merchantability. As the foregoing discussion has shown, the three theories are closely related.

With respect to negligent failure to warn, a manufacturer is under a duty to exercise reasonable care to warn of a dangerous condition of a product or of the facts which make the product likely to be dangerous, when the manufacturer knows or has reason to know that the product is or is likely to be dangerous for the use for which it is supplied, and has no reason to believe that those for whose use the product is supplied will realize its dangerous condition or the facts which make the product likely to be dangerous. *Featherall v. Firestone Tire & Rubber Co.,* 252 S.E.2d 358, 366 (Va.1979); *Besser,* 415 S.E.2d at 144. As to breach of the implied warranty of merchantability, a manufacturer must supply a product that, at the time it leaves the manufacturer's hands, is not unreasonably dangerous for the use to which it would ordinarily be put or for some other reasonably foreseeable purpose. *Featherall,* 252 S.E.2d at 367; *Besser,* 415 S.E.2d at 144.

The court finds no reason to preclude the plaintiff from proceeding on all three theories. As outlined above, the latter two theories, like negligence, hinge on the intended or foreseeable purpose or use of the product. Again, in this case, the Isuzu Trooper was not being unforeseeably misused.

**1238**

## VI.

For the foregoing reasons, this court concludes that, under Virginia law, an automobile manufacturer has a duty to exercise ordinary care to design a vehicle that is reasonably safe in the event of an accident. Accordingly, defendants' motion for partial summary judgment as to the "crashworthiness" doctrine is denied. The plaintiff will be permitted to pursue his claims of negligence, negligent failure to warn, and breach of the implied warranty of merchantability with respect to the allegedly defective roof.[3]

Kelly Ambrose, Asst. U.S. Atty., Charleston, W.Va., for plaintiff.

Hunt L. Charach, Federal Public Defender, Charleston, W.Va., for defendant.

---

**3.** This decision has no bearing on plaintiff's claims with respect to the other alleged design defects.