**CIRCUIT COURT OF FAIRFAX COUNTY**

Patrick C. Ward

v.

Honda Motor Co. et al.

April 18, 1994

Case No. (Law) 118739

BY JUDGE JANE MARUM ROUSH

This matter came before the Court on March 4, 1994, on a motion for summary judgment filed by defendants, American Honda Motor Company, Limited, and Honda Motor Company, Limited ("Honda" or "defendants"). The Court received memoranda, heard oral argument, and took the matter under advisement. For the reasons set forth below, the motion is denied.

The facts of this case may be briefly summarized. Plaintiff Dr. Patrick C. Ward was involved in a collision while driving his 1988 Honda Accord. There is no evidence adduced to date to suggest that the accident was due to any fault on the part of Dr. Ward; rather, another vehicle struck his car while attempting a left turn in front of him. Upon impact, Dr. Ward's right knee struck a bracket protruding from the instrument panel of the Honda. The bracket pierced Dr. Ward's knee and dislocated his kneecap, resulting in serious injury.

Dr. Ward's suit against Honda alleges numerous causes of action based on products liability. At issue here is plaintiff's contention that his Honda Accord "was not in conformance with the crashworthiness standard applicable to automobiles designed and distributed for use in the United States." Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Memorandum in Opposition") at 2. Defendants filed this motion for summary judgment, stating that "[a]ll of the plaintiff's claims . . . are based on the allegation that the vehicle in question was not 'crashworthy.'" According to the defendants, Virginia

law does not recognize a cause of action based on the lack of "crash-worthiness," and Dr. Ward's claims "must therefore fail as a matter of law." Memorandum in Support of Motion for Summary Judgment at 2.

The term "crashworthiness" refers to the protection of passengers in an automobile when that automobile is involved in an accident. *See, Dreisonstok v. Volkswagenwerk*, 489 F.2d 1066, 1069, n. 3 (4th Cir. 1974). The same concept is sometimes described as a "second colli-sion," or "enhanced injury." *Id.* The concept relates to the injuries suffered by an occupant of an automobile involved in a collision when the initial impact forces the occupant's body to collide with the inte-rior of the automobile, causing further injuries. The crashworthiness doctrine "imposes a duty on a manufacturer to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreason-able risk of injury in the event of a collision." *Euler v. American Isuzu Motors, Inc.*, 807 F. Supp. 1232, 1233 (W.D. Va. 1992).

The issue before this Court, therefore, is whether under Virginia law an automobile manufacturer has some duty to design a "crashworthy" product. Neither the Virginia Supreme Court nor the Virginia General Assembly has expressly recognized or adopted the crashworthiness doctrine.[1]

The two leading cases on crashworthiness were decided by the fed-eral courts in the late 1960's. In *Evans v. General Motors Corp.*, 359 F.2d 822 (7th Cir. 1966), the Court held that a manufacturer's duty is limited to the production of an item reasonably safe for its "intended purpose." *Id.* at 825. The Court stated that the intended use of an automobile "does not include its participation in collisions, despite the manufacturer's ability to foresee the possibility that such collisions may occur." *Id.*[2]

The second leading case on crashworthiness is *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968), decided two years after *Evans*. In *Larsen*, the Eighth Circuit ruled that injuries resulting from the "second collision" are "readily foreseeable as an incident to the

---

[1] *See Euler, supra,* at 1233. *See also,* James W. Jennings & Harry M. Johnson, III, *Crashworthiness in Virginia: Is There a Duty to Design a Product That Will Prevent Injury?*, 5 J. Civ. Litig. 145 (1993).

[2] Subsequently, *Evans* was overruled by *Huff v. White Motor Corp.*, 565 F.2d 104 (7th Cir. 1977). The *Huff* decision, however, was based on statutory changes enacted by the Indiana legislature subsequent to *Evans* which are not applicable here.

normal and expected use of an automobile." *Id.* at 502. Although the Court recognized that "an automobile manufacturer is under no duty to design an accident-proof or fool-proof vehicle or even one that floats on water," it ruled that the manufacturer "is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision." *Id.* The Court noted that collisions are "statistically inevitable," and manufacturers therefore must consider risks created by the design of their products. *Id.*

Although no Virginia cases have addressed crashworthiness under Virginia law, three Virginia Supreme Court cases are useful in evaluating the question of its applicability. In *Turner v. Manning, Maxwell & Moore, Inc.*, 216 Va. 245 (1975), plaintiff was injured while attempting to use a hoist to dislodge frozen metal. The Court declined to impose liability on the manufacturer of the hoist, stating that the manufacturer "is not an insurer and is not required to design and market an accident-proof product." *Id.* at 251. The Court found that the hoist was not being used for its "intended purpose" at the time of the accident and that it "was the unforeseeable misuse of the hoist, not the absence of an upper safety hook, that caused the accident." *Id.* at 251 (citations omitted).

The second case, *Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949 (1979), involved the explosion of a stainless steel lid from a syrup tank at a soft-drink bottling company. Featherall sued, among others, the manufacturers of both the lid and the regulators used to reduce pressure in the tank. The evidence indicated that the components of the tank system were mismatched; a lid manufactured by one company was being used with a tank built by a different company. *Id.* at 964. In addition, the lid at issue was "designed for use with a [matching] tank in a soft-drink dispensing process," but at the time of the accident was being used "on a [different manufacturer's] tank as part of a prolonged cleaning process." *Id.* As for the regulator, it was being used without its "locknut," a safety feature that the Court observed was easily removed. *Id.* at 966. The Court held that the manufacturer of the lid was not liable to the plaintiff because there was misuse of the lid which could not have been "foreseen or reasonably anticipated" by the manufacturer. *Id.* at 964. Liability was imposed on the maker of the tank regulator based on a failure to warn. *Id.* at 966. The Court ruled that the manufacturer of the regulator "could have

reasonably foreseen the danger . . . that the regulator would likely be used not as manufactured but without the locknut, given the facility with which the nut could be removed from the instrument." *Id.* The Court ruled that such foreseeable misuse was "in marked contrast to the unanticipated misuse of the . . . lid," for which no liability was assigned. *Id.*

The third and most recent Supreme Court case bearing on the issue at hand is *Besser Co. v. Hansen*, 243 Va. 267 (1992). The injury giving rise to that lawsuit occurred when the plaintiff stepped between two electrically powered transfer cars to uncouple the racks of cement blocks they were towing. Plaintiff had failed to disconnect the power to the cars before stepping between them; as a result, he was pinned between a rack and the steel pressure chamber which was its ultimate destination. In finding for the defendant, the Supreme Court cited *Featherall* and *Turner*, reiterating that a manufacturer "is not required to supply an accident-proof product." *Id.* at 276 (citation omitted). As in both *Turner* and *Featherall*, the Court ruled that a manufacturer has no duty to guard against injuries resulting from unforeseeable misuse. *Id.* at 277. The car manufacturer "had no reason to know or foresee that an operator would put himself in the path of the racks without seeing that he had the switch turned to 'off.'" *Id.* Moreover, the defendant manufacturer had no reason "to know or foresee that an operator would not realize that danger and heed the warnings on the panel." *Id.*

Defendants in the instant suit point to this trio of cases to support their argument that crashworthiness is not a doctrine that is or will be recognized under Virginia law. Plaintiff cites the same three cases and contends that the Virginia Supreme Court has "indicated that manufacturers of products will be held accountable where their products are being used in a foreseeable manner." Memorandum in Opposition at 9.

A careful reading of *Turner*, *Featherall*, and *Besser* reveals that the Virginia Supreme Court held in favor of the defendant manufacturers in those cases when their products had been misused in an unforeseeable manner. *See, e.g., Featherall, supra,* at 966 ("foreseeable misuse is in marked contrast to . . . unanticipated misuse"). As Judge Michael aptly noted in *Euler*:

> The clear import of *Turner*, *Featherall*, and *Besser* is that a manufacturer may avoid liability when his product is unforeseeably misused. The equally clear implication of these cases is that, assuming satisfaction of the other elements of a neg-

ligence claim, a manufacturer may be held liable when his product is foreseeably used or even foreseeably misused.

*Euler v. American Isuzu Motors, Inc.*, 807 F. Supp. 1232, 1236 (W.D. Va. 1992).

Defendants compare the doctrine of crashworthiness to that of strict liability, noting that the latter is not recognized in Virginia. Reply to Opposition to Motion for Summary Judgment at 3. According to defendants, recognition of crashworthiness "eviscerates the traditional notions of contributory negligence long recognized in Virginia." *Id.* This concern has been noted, although not decided, by at least one other court. *Knippen v. Ford Motor Co.*, 546 F.2d 993, 1002, n. 12 (D.C. Cir. 1976). Contributory negligence is not inapplicable in crashworthiness cases. Negligence on the part of the user does not affect the design of the car. Such negligence, however, may be critical in determining whether the car has been unforeseeably misused or whether the design caused an unreasonable risk of injury to the user in the event of a collision. In short, Virginia's adherence to contributory negligence does not preclude recognition of the crashworthiness doctrine.

Those federal courts that have considered the issue have each predicted that Virginia would recognize a cause of action based on crashworthiness. *Dreisonstok*, 489 F.2d at 1069; *Euler*, 807 F. Supp. at 1236. This prediction is based in part on the foreseeability of automobile collisions. The *Euler* court observed that it "is settled beyond doubt that automobile accidents are reasonably foreseeable," as "[t]ens of thousands of people are killed in motor vehicle accidents each year and many more are injured." *Id.*

The Virginia Supreme Court rulings in *Turner*, *Featherall*, and *Besser* cited by defendants do not prohibit as a matter of law a cause of action based on the crashworthiness doctrine. Those rulings bar recovery where there is "unforeseeable misuse" of the product by the plaintiff. No such finding has been made as to the collision at issue in this case, and the Court will not make such a finding at this time. The Court cannot say, as a matter of law, that Dr. Ward was misusing his Honda at the time of the collision in such a way that was not foreseeable by Honda.

The Court holds that the Virginia Supreme Court would impose upon an automobile manufacturer a duty to exercise ordinary care to design a vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a foreseeable collision. The Court is not creating

a new cause of action. As the Eighth Circuit held in the *Larsen* case: Where the injuries or enhanced injuries are due to the manufacturer's failure to use reasonable care to avoid subjecting the user of its products to an unreasonable risk of injury, general negligence principles should be applicable . . . . *Larsen, supra*, at 502. Similarly, as Judge Michael opined in the *Euler* case:

> Whether called "crashworthiness," "second collision," or "enhanced injury," the cause of action is simply negligence. The plaintiff still must prove the elements thereof.

*Euler, supra*, at 1237.

The Court holds that it is a question of fact for the jury to decide whether Honda used reasonable care in the design of its 1988 Honda Accord to avoid subjecting Dr. Ward to an unreasonable risk of injury in the event of a foreseeable collision.

This Court, therefore, will deny defendants' motion for summary judgment.